76 F.3d 389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Billy T. LANGSTON, Defendant-Appellant.
 No. 94-50519.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1995.
Decided Jan. 31, 1996.
Amended March 4, 1996.
 
 Before: HUG, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Billy T. Langston appeals his conviction and sentence for conspiracy to aid and abet the manufacture of PCP and aiding and abetting the manufacture of PCP. Langston claims the district court improperly admitted evidence and that there was insufficient evidence to support the jury verdict. He also claims the district court erred in failing to adjust his sentence downward. We affirm.
 
 
 3
 * The district court properly found the search of the van lawful. Morganfield, who was driving the van, consented to the search. The district court found the consent voluntary. The determination that a defendant voluntarily consented to a search is a question of fact reviewed for clear error. United States v. Chischilly, 30 F.3d 1144, 1151 (9th Cir. 1994), cert denied, 115 S.Ct. 946.
 
 
 4
 We have stated that several factors should be considered in determining whether the search was voluntary: (1) whether Morganfield was in custody; (2) whether the officer had his weapon drawn; (3) whether Morganfield was advised of his Miranda rights; (4) whether Morganfield was told he could refuse to consent; and (5) whether Morganfield was told a search warrant could be obtained. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1988). "The fact that some of these factors are not established does not automatically mean that consent was not voluntary." Id. Morganfield was not in custody, and the officer did not have his firearm drawn when Morganfield consented to the search. The district court considered all of the relevant factors, and found Morganfield's consent to be voluntary. This finding was not clearly erroneous. See United States v. Cannon, 29 F.3d 472, 477 (9th Cir. 1994) (upholding finding consent was voluntary when officer did not use force or draw his weapon, did not handcuff defendant, and did not suggest he had the authority to search the defendant's car even without defendant's consent). Because Morganfield consented, the search was valid. See United States v. Childs,, 944 F.2d 491, 495 (9th Cir. 10991) (consent of one defendant with common authority over the premises justifies search, even if a codefendant who was physically present did not consent).
 
 
 5
 Additionally, the district court also was correct in finding the officer had probable cause to search the van. Probable cause determinations are reviewed de novo. United States v. Dunn, 946 F.2d 615, 618 (9th Cir.), cert denied, 502 U.S. 950 (1991). The officer testified that he stopped the van because it was speeding and displayed no rear license plate. While talking to Morganfield, the officer became suspicious that Morganfield was lying when he answered sone of the officer's questions. The officer observed white buckets, a drop cloth and the smell of ether. He testified that he thought hazardous materials might be leaking inside the van; he also testified he associated the smell of ether with PCP. Either of these reasons is sufficient probable cause to search the van.
 
 II
 
 6
 We review evidentiary rulings for an abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir.1994). The admission of expert testimony is committed to the district court's sound discretion. We will reverse only if the decision is manifestly erroneous. United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.), cert. denied, 488 U.S. 836 (1988).
 
 A.
 
 7
 Government expert Robert Baker testified that it is common for purchasers of chemicals used to manufacture PCP have knowledge of the intended use. Langston claims that this testimony violates Federal Rule of Evidence 704. The rule states that an expert may not "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime." Baker, however, did not testify that he thought Langston knew the chemicals were being purchased to make PCP; he stated that generally people who buy the chemicals know the use for which the chemicals are being purchased. This court has held similar testimony does not violate FRE 704. See, e.g., United States v. Lockett, 919 F.2d 585, 590 (9th Cir.1990) (officer testified that generally only persons who are intimately involved in cocaine packaging are allowed at the packaging site).
 
 
 8
 Langston also challenges Baker's testimony under Federal Rule of Evidence 702, which allows an expert witness to testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." We have held that Rule 702 allows experts to testify about the modus operandi of criminals. The testimony in this case, however, went beyond an expert interpretation of the techniques Langston used. See, e.g., United States v. Espinoza, 827 F.2d 604, 612 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988). The expert testified here about the general mental state of criminal defendants.
 
 
 9
 Although we have serious questions whether Baker had "scientific, technical, or other specialized knowledge" which would assist the trier of fact in determining a criminal defendant's mental state, we do not find the district court committed manifest error in allowing Baker to testify. The court told Baker he could answer the question if he knew the answer and it was within his expertise. Baker had worked on more than 500 narcotics cases, and had made PCP-related arrests in more than 300 of those cases. While we might disagree about the usefulness to the jury of a police officer's testimony that people who buy these chemicals commonly know that they are to be used to make PCP, nevertheless the court was within its discretion to find Baker had specialized knowledge supporting his testimony.
 
 B.
 
 10
 Langston argues that the district court allowed Baker to testify about matters which were irrelevant. Specifically, Langston argues because he was charged with aiding and abetting and conspiracy to manufacture PCP, evidence of selling, packaging and transporting the drug out of state is irrelevant; thus, he says, Baker should not have been allowed to testify as to these matters. Some of this testimony was not objected to at trial, or was relevant background information to help the jury understand the nature of the drug and how it is manufactured. Some of the testimony was relevant to explain why Langston and Morganfield would drive to another city to purchase chemicals for someone else to make PCP. The only irrelevant testimony was Baker's testimony that PCP is often shipped out of state. However, the court ordered stricken half of the testimony on this area. The testimony which did reach the jurors was harmless.
 
 III
 
 11
 The district court was within its discretion to allow government witness Katina Kypridakes to testify that her review of Custom Labs' receipts made her "suspicious" of the company. The defendants opened the door to Kypridakes' statements by eliciting testimony from the manager of Custom Lab that the company does not make suspicious sales. See United States v. Vaandering, 50 F.3d 696, 704 (9th Cir.1995). In his reply brief, Langston contends that Kypridakes' testimony was not within her expertise, and she did not have the foundation or basis to testify. Because these objections were not sufficiently raised in the opening brief,[1] they are waived. See Greenwood v. Federal Aviation Administration, 28 F.3d 971, 977 (9th Cir.1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").
 
 IV
 
 12
 Because Langston did not move for a judgment of acquittal at the end of his case, we "review[ ] the sufficiency of the evidence arguments only for 'plain error to prevent a miscarriage of justice.' " United States v. Foster, 57 F.3d 727, 729-30 (9th Cir.1995) (quoting United States v. Winslow, 962 F.2d 845, 850 (9th Cir.1992)).[2] The inquiry asks whether, "reviewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Foster, 57 F.3d at 729 (quoting United States v. Reyes-Alvarado, 963 F.2d 1184, 1187 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992)).
 
 
 13
 Langston transported nine of the ten chemicals needed to make PCP, and had made similar purchases in the past. He confessed that he was getting the chemicals so Jones could manufacture PCP. The evidence was sufficient to support a conviction.
 
 
 14
 Langston argues there was insufficient evidence of his knowledge of the crime. Contrary to his assertion, even without Baker's or Kypridakes' testimony, his confession is sufficient to show that he knew that the chemicals were going to be used to make PCP. Although Langston denied the confession, the jury was free to disbelieve him.
 
 
 15
 Langston also argues that becuase one of the key chemicals to make PCP was missing, he cannot be convicted of a crime relating to the "manufacture" of PCP. He is wrong. Neither conspiracy to manufacture PCP nor aiding and abetting the manufacture of PCP requires that Langston commit all of the steps necessary to make PCP. Aiding and abetting only requires "substantial steps" toward commission of the crime; conspiracy requires committing an act in furtherance of the conspiracy. United States v. Arbelaez, 812 F.2d 530, 534 (9th Cir.1987). Purchasing and attempting to deliver nine of the ten necessary chemicals is sufficient to meet both of these standards. See, e.g., Foster, 57 F.3d at 730 (conspiracy to manufacture methamphetamine may be satisfied by evidence defendant directed another to purchase precursor chemicals).
 
 V
 
 16
 A district court's interpretation of the Sentencing Guidelines is reviewed de novo, but its factual findings are reviewed for clear error. United States v. McAninch, 994 F.2d 1380, 1383 (9th Cir.), cert. denied, 114 S.Ct. 394 (1993). A district court's discretionary refusal to depart from the Sentencing Guidelines is not reviewable on appeal. United States v. Eaton, 31 F.3d 789, 792 (9th Cir.1994).
 
 
 17
 Langston challenges his sentence arguing that the court did not specifically address his objections. The court stated, "I believe that the position of the probation department's pre-sentence report is correct as to the objections lodged and the--and therefore their recommendation is correct according to the law." The requirement that the district court's ruling be sufficiently clear may be met by adopting the reasoning of the pre-sentence report ("PSR"). United States v. Davis, 36 F.3d 1424, 1436 (9th Cir.1994), cert. denied, 115 S.Ct. 1147 (1995).
 
 
 18
 Whether Langston was a minor or minimal participant under § 3B1.2(a) is a factual determination, subject to clearly erroneous review. United States v. Lui, 941 F.2d 844, 848 (9th Cir.1991). The PSR stated that Langston's knowledge that the chemicals were to be used to make PCP, and his admission that he had made multiple deliveries of the chemicals before, warranted a finding that Langston was not a minor or minimal participant. The court's adoption of this finding was not clear error. See, e.g., United States v. Zwerber, 913 F.2d 705, 710 (9th Cir.1990) (not clearly erroneous to refuse to find a defendant was only a minor or minimal participant when defendant knew he was transporting cocaine and received money for it).
 
 
 19
 The court also did not err in refusing to reduce downward Langston's sentence for acceptance of responsibility pursuant to § 3E1.1(a). A defendant convicted by trial will be eligible for an acceptance of responsibility reduction only in "rare" situations, such as when the defendant goes to trial to preserve issues unrelated to guilt. USSG § 3E1.1, comment 2. Langston contested his guilt at trial by denying he knew the chemicals were to be used to make PCP. The guideline states that "[t]his adjustment is not intended to apply to a defendant who puts the Government to its burden of proof at trial by denying the essential factual elements of guilt ..." Id. Langston argues that he wanted to accept a government plea bargain but could not because it was part of a package deal with his codefendant, who refused it. This point is irrelevant to an acceptance of responsibility reduction because even without a plea agreement Langston could have plead guilty. See generally United States v. Vance, 62 F.3d 1152, 1157-60 (9th Cir.1995).
 
 VI
 
 20
 Finally, Langston challenges the district court's decision not to adjust downward his criminal history category. Langston argued to the district court that the criminal history category overrepresented the seriousness of his prior conviction. The district court accepted the PSR, which responded to Langston's argument by stating, "The Criminal History Category was arrived at through current Guideline application principles. Chapter Four of the Guidelines Manual makes no provision for the distinctions in applicability of criminal history points which defense counsel references." At the sentencing hearing, the government took care to clarify that the court was exercising its discretion not to adjust Langston's sentence downward.[3] Although the court expressed dismay at the length of the sentence, the court was criticizing the mechanical nature of the Sentencing Guidelines, not its inability to make discretionary departures if warranted by the facts of the case. The district court's decision refusing to adjust Langston's criminal history downward was discretionary, so this court lacks jurisdiction to hear any challenge to that decision. See United States v. Rivera, 996 F.2d 993, 997 (9th Cir.1993).
 
 CONCLUSION
 
 21
 We AFFIRM Langston's convictions for aiding and abetting the manufacture of PCP and conspiracy to manufacture PCP, and AFFIRM the sentence imposed by the district court.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The opening brief mentions that lawyers at trial objected to foundation and improper opinion, but does not argue that the district court erred in ruling on those grounds
 
 
 [2]
 Langston contends that the issue was preserved for appeal because the defense lawyers argued to the jury that there was not sufficient evidence to convict. He has not cited any cases to support this proposition, and we cannot find any
 
 
 [3]
 MR. SHAPIRO: To clarify just two things. I took the Court's comments about the sentencing guidelines. I understand that the Court is not exercising its discretion and has adopted the pre-sentence report and has considered and rejected the arguments regarding mitigating role and also the question--
 THE COURT: I've already stated that I have adopted what the probation department's analysis was on that score....
 MR. SHAPIRO: Thank you, Your Honor.
 THE COURT: It cuts both ways. The law.
 MR. SHAPIRO: I just wanted to clarify your comments about the sentencing guidelines. I (sic) did not reflect the fact that Your Honor thought that you lacked the discretions (sic) it were to, for example, accept those departure recommendations and consider them. And reject them.
 THE COURT: No. I'm doing my best to follow the law, and it cuts both ways. The law says that minimum 360 months. It also says to analyze properly those various things. And I think I have. I agree with the probation department on them. But that doesn't make it right. That's my point. All right?
 MR. SHAPIRO: Yes, sir.